**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RICHARD DENARD HARRIS,**

      **Petitioner,**

**v.**                                  **Case No. 8:16-cv-3323-T-35AEP**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

      **Respondent.**
_____/

**O R D E R**

This cause is before the Court on Richard Denard Harris's timely-filed amended petition for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 6) Respondent filed a response. (Doc. 10) Harris did not reply. Upon consideration of the amended petition and response, and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, it is **ORDERED** that the amended petition is **DENIED**:

**BACKGROUND**

The State of Florida charged Harris with first degree premeditated murder with a firearm (count one), armed burglary of an occupied dwelling with a battery (count two), and home invasion robbery with a firearm resulting in death or great bodily harm (count three). (Doc. 10-1 Ex. A) Harris entered an open plea to counts two and three as charged and to the lesser-included charge of second degree murder on count one. (Doc. 10-1 Ex. C) The state trial court sentenced Harris to life imprisonment, with a 25-year minimum mandatory term, on all three counts. (Doc. 10-1 Ex. D)

1

Harris filed a *pro se* motion to withdraw his plea after sentencing. (Doc. 10-1 Ex. F) The state trial court found that Harris's *pro se* motion was a nullity because he was represented by counsel. (Doc. 10-1 Ex. G at 11) The state appellate court *per curiam* affirmed Harris's convictions and sentences. (Doc. 10-1 Ex. J) The state appellate court also *per curiam* affirmed the state court's summary denial of Harris's motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 10-1 Exs. L, M, S)

## STANDARDS OF REVIEW

## I.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the

state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Harris's judgment and sentence, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## II.     Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is

established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Harris must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Harris must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Specifically, because he pleaded guilty, Harris "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v.*

*Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

<u>**DISCUSSION**</u>

**I.**     **Introduction: Harris's Change of Plea**

Harris entered his plea on August 15, 2013. At the change of plea hearing, the prosecutor stated a factual basis for the charges (Doc. 10-1 Ex. B at 11-15):

> [Harris], along with Willoughby and Trammell,[1] on August the 16th, 2011 in the evening hours went to 174 Grand Street, Masayrktown, Hernando County, Florida. This Defendant was armed with an AK-47 rifle. Defendant Trammell was armed with a .12 gauge shotgun. And Defendant Willoughby was armed with a handgun.
>
> The three Defendants went to the home in anticipation of the victim Michael Pfeifer being present, along with believing that there would be U.S. currency and/or controlled substances there.
>
> After the three Defendants entered the home through a rear door brandishing their firearms, they came into contact with Mr. Pfeifer and also another occupant of the home, Mr. Cliff Kearney. Mr. Pfeifer and Mr. Kearney were put down on the floor at gunpoint and they were - - both Mr. Pfeifer and Mr. Kearney were in fear of great bodily harm as a result of the Defendants' actions and seeing the firearms.
>
> Defendant Willoughby went into another room and proceeded to ransack that room. And during the course of the incident, Defendant Harris and Trammell, during that incident with the two victims on the floor in the bedroom, there came a point in time when Mr. Kearney was struck by one of the firearms about the head.
>
> Mr. Pfeifer started to get up from the ground and engage in a physical altercation with Defendant Harris as he had the AK-47. During the course of that incident, Defendant Trammell with the .12 gauge shotgun fired two shotgun rounds striking Mr. Pfeifer in the thigh areas and during that course, Mr. Harris discharged the AK-47 and Mr. Pfeifer was also struck with at least one round from the AK-47, also in the lower extremities.
>
> After the firearms were discharged the Defendants obtained some property from the residence and fled on foot. Mr. Kearney, who was at the scene, who had been struck in the head, he eventually called 9-1-1 and members

---

[1] Harris's co-defendants were Robert Holmberg Willoughby III and Nicholas J. Trammell. (Doc. 10-1 Ex. A)

of the Hernando County Sheriff's Office and fire rescue responded to the scene.

Mr. Pfeifer died at the scene because of the blood loss that he sustained as a result of the shots being fired.

The Hernando County Sheriff's Office commenced their investigation and members of the crime scene section observed by Mr. Pfeifer's feet a Band-aid. That Band-aid was subsequently taken into evidence, was forwarded down to the Florida Department of Law Enforcement for DNA analysis and the DNA results reflected the DNA on that Band-aid was the Defendant Harris's DNA.

After the home invasion and the shooting, the three Defendants returned to a home in Brooksville and while there, with the property that they had taken from the home, they recounted in the presence of individuals who knew Mr. Harris what had taken place at the home down in Masaryktown during the shooting and the murder of Mr. Pfeifer.

There came a point in time where all three of the Defendants parted company and in the days that followed, the firearms and property that was taken was buried by Mr. Trammell and an acquaintance of his, Mario Stuart.

The first individual to be arrested with regard to this case in the days that followed the murder was Defendant Harris. After he was taken into custody he provided a formal sworn post-Miranda statement to detectives of the Hernando County Sheriff's Office where he admitted his involvement with regard to the murders.

The next Defendant to be apprehended was Defendant Willoughby. When he was subsequently taken into custody, he also gave a formal post-Miranda statement admitting to his involvement and the involvement of the co-defendants.

And based upon that, the last individual to be arrested was Defendant Trammell down in Pasco County. He was taken into custody and when interviewed by members of the Hernando County Sheriff's Office down in Pasco, he denied any knowledge or involvement with regard to the incident.

However, while he was in custody in the Pasco County jail he had some telephone conversations that were recorded, to Mario Stuart, with regard to what had occurred and whether or not the items were still disposed of where they were disposed of.

There came a point in time when Mr. Stuart notified the Hernando County Sheriff's Office and cooperated with the detectives from Hernando County

and, in fact, took them to the location where the shotgun and the AK-47 were recovered, along with property that had been taken during the course of the home invasion and the armed burglary.

The casings - - the AK-47 casings that were recovered at the scene, through laboratory examination, went - - were discharged from the AK-47 that was discovered where the Defendant Trammell had buried it, along with the shell casings from the .12 gauge shotgun.

At autopsy, the Medical Examiner determined Mr. Pfeifer's cause of death was multiple gunshot wounds and blood loss sustained as a result of the femoral artery being damaged during the shooting; the manner of death being a homicide. And that's what the State would prepare to show at trial.

Harris did not contest the prosecution's factual basis.[2] The court conducted a colloquy with Harris concerning his choice to enter the plea (Doc. 10-1 Ex. B at 5-11, 18):

THE COURT: [ ] Mr. Harris, your attorney advises this morning that you want to withdraw your previously entered plea of not guilty in your criminal cases[3] and this morning enter pleas of guilty in your cases. Is that correct?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Okay. Mr. Harris, do you understand that you have a right to a jury trial in each of your cases?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Do you understand that at a jury trial you would have a right to be represented by an attorney, you would have a right to confront and cross-examine the State's witnesses against you, you would have a right to call witnesses in your own defense, and you would have the right to either choose to testify yourself or you could choose not to testify.

And if you choose not to testify, the jury would be instructed that they could not use that against you in any way. Do you understand those rights?

DEFENDANT HARRIS: Yes, sir.

---

[2] Upon questioning from the court, counsel agreed that the State could present at least a *prima facie* case in support of the charges based on these facts. (Doc. 10-1 Ex. B at 17-18)

[3] Harris also entered pleas in two other cases, which are not the subject of this federal habeas petition.

THE COURT: Do you understand that by entering a plea of guilty this morning you are giving up your right to jury trials in each of your cases and there will be no jury trials in your cases?

DEFENDANT HARRIS: Yes, sir.

THE COURT: You understand that by entering a plea of guilty this morning that you are also giving up your right to appeal all matters relating to the judgment, including the issue of whether or not you're guilty of the charges?

DEFENDANT HARRIS: Yes, sir.

THE COURT: And you would retain the right to appeal if something were done improperly today or at the time of your sentencing or if I were to give you an illegal sentence, which is not my plan to do. Do you understand that?

DEFENDANT HARRIS: Yes, sir.
. . .

THE COURT: Mr. Harris, how old are you, sir?

DEFENDANT HARRIS: Twenty-six years old.

THE COURT: Can you describe your educational background for me?

DEFENDANT HARRIS: I went to high school up to 12th grade, but I didn't graduate.

THE COURT: Didn't finish the 12th grade.

Do you read and write the English language?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Did you read and sign the document I have in my hand?

DEFENDANT HARRIS: Yes, sir.

THE COURT: That document is entitled Waiver of Rights and Plea Agreement. It has your full name on it. . . . [I]t has all of your case numbers referenced, It appears to bear your signature. There are paragraphs with the initials "R.H." Did you initial those paragraphs?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Does that mean that you read and understand each of these paragraphs?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Did you have the opportunity to go over this document with [counsel]?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Do you believe you fully understand the terms in the plea agreement as well as all the rights that you give up by entering the plea?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Okay. Now, as announced by [counsel], you understand that in return for your plea of guilty today that the State has agreed to allow you to enter a plea to a lesser included offense of murder in the second degree with a firearm. Do you understand that?

DEFENDANT HARRIS: Yes, sir.

THE COURT: And do you understand that the lesser included offense of second degree murder with a firearm, under the facts as alleged in the Indictment, would carry with it certain minimum mandatory sentence requirements. Do you understand that?

DEFENDANT HARRIS: Yes, sir.

THE COURT: And because you are alleged, and if you plead guilty to that, you are admitting that you possessed, discharged and - - possessed and discharged a firearm; that as a result of the discharge, death or great bodily harm was inflicted on another person, the minimum sentence you can receive for that offense is 25 years in the department of corrections and the sentence could be up to life. Do you understand that?

DEFENDANT HARRIS: Yes, sir.

THE COURT: And there is no negotiation as far as that's concerned other than you understand that you will at least receive the minimum mandatory sentence. Do you understand that?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Okay. Mr. Harris, have you had sufficient time to discuss your case with your attorney?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Has your attorney done everything you asked him to do in terms of talking to witnesses, finding witnesses, interviewing witnesses that the State has listed - - is there anything that you've asked him to do that he has not done?

DEFENDANT HARRIS: No.

THE COURT: Okay. Are you satisfied with your attorney's services?

DEFENDANT HARRIS: (indiscernible) Yes, sir.

THE COURT: I understand you may not be thrilled about what you're doing to[da]y, and I'm not asking you about that. What I'm asking you is has your lawyer done everything you expect of him?

DEFENDANT HARRIS: Yes, sir.

THE COURT: Okay. Has anyone promised you anything other than the terms of the agreement in order to get you to enter a plea of guilty today?

DEFENDANT HARRIS: No, sir.

THE COURT: Has anyone threatened or coerced you to get you to enter a plea today?

DEFENDANT HARRIS: No, sir.

THE COURT: Are you presently under the influence of any drugs or alcohol or anything else that would affect your judgment today?

DEFENDANT HARRIS: No, sir.

THE COURT: Have you ever been treated for any type of mental illness?

DEFENDANT HARRIS: No, sir.

. . .

THE COURT: All right. Mr. Harris, are you entering a plea of guilty today because you are guilty and/or because you believe it to be in your best interest.

DEFENDANT HARRIS: Yes, sir.

THE COURT: Okay. You think it is in your best interest to enter a plea today?

DEFENDANT HARRIS: Yes, sir.

The court then accepted Harris's plea of guilty. (Doc. 10-1 Ex. B at 19) Since a guilty plea waives non-jurisdictional defects, a petitioner who enters a plea can only challenge the knowing and voluntary nature of the plea. Entry of a plea, therefore, precludes most challenges to the conviction. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (holding that, after a criminal defendant enters a guilty plea, he "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within" the range of competence for criminal attorneys); *see also United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").

The record reflects that Harris knowingly and voluntarily entered his plea. "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea will be upheld on federal review.'" *Stano v. Dugger*, 921

F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980))). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

When he entered his guilty plea, Harris told the court that he was not coerced or threatened; that he had sufficient time to talk to counsel; that he understood the required minimum mandatory term of 25 years as well as the maximum possible punishment of life imprisonment; and that he understood the rights he was waiving. Harris's statements at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true."); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.").

## II.    Ground One

Harris argues that his plea was involuntary because counsel failed to advise him of the available defense of accidental shooting. Harris alleges that he was unaware the AK-47 was loaded, that there was never a plan to shoot anyone, and that "it was during the struggle over the AK-47 that [co-defendant] Trammell rushed in and fired his shotgun in an attempt to thwart the struggle, accidentally shooting Mr. Pfeifer in the lower portion of his body." (Doc. 6 at 6) Harris contends that he would have insisted on going to trial

instead of entering his plea had he known about this potential defense. The state court denied Harris's claim (Doc. 10-1 Ex. M at 2-3):

> In ground one (1), the Defendant argues that his plea was involuntary because defense counsel led the Defendant to believe there was no viable defense. Specifically, the Defendant argues his plea was involuntary because defense counsel was ineffective for failing to advise the Defendant about the possible defense of accidental shooting.
>
> When a defendant is seeking to withdraw his plea after a sentence has been entered, the Defendant must demonstrate that withdrawal of the plea is necessary to correct a "manifest injustice." *LeDuc v. State*, 415 So.2d 721 (Fla. 1982) (citing *Williams v. State*, 316 So.2d 267 (Fla. 1975)). The United States Supreme Court held that the two-prong test laid out in *Strickland v. Washington* also applied to claims of ineffective assistance of counsel arising out of the plea process. See *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The Defendant alleges he was prejudiced by defense counsel's failure to advise the existence of the defense accidental shooting. However, even if defense counsel had argued an accidental shooting defense, the State could have amended the information to charge the Defendant with felony murder pursuant to 782.04(3), which would have been greater than the charge pled to by the Defendant. Therefore, the Defendant has failed to show a manifest injustice to satisfy the prejudice prong under *Strickland*, and this claim is denied.

Harris fails to show entitlement to relief. To the extent the state court's decision rests on state law concerning the amendment of a charging information, this Court must defer to the state court's determination that the prosecution could have amended the information and properly charged Harris with felony murder. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[The United States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir. 1992) ("State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases.").

The state court found that if Harris had raised an accidental shooting defense, the prosecution could have charged him with felony murder, which is a first degree felony punishable by life under § 782.04(3), Fla. Stat. Harris pleaded guilty to second degree murder under § 782.04(2), Fla. Stat., which is also a first degree felony punishable by life. (Doc. 10-1 Ex. B at 15, Ex. D)[4] The state court was therefore incorrect in characterizing the potential alternative charge of felony murder as "greater than," rather than "equal to," the charge to which Harris pleaded guilty. Despite this apparent discrepancy, however, Harris fails to show entitlement to relief. Under state law, accidental shooting would be an invalid defense to a felony murder charge. *See Kormondy v. State*, 703 So.2d 454, 459-60 (Fla. 1997) (holding that, although a judgment of acquittal should have been granted on a count of premeditated murder because the State did not overcome Kormondy's reasonable hypothesis of an accidental shooting, the record supported a conviction for felony murder); *Farr v. State*, 124 So.3d 766, 777 (Fla. 2012) ("The fact that the [fatal car] crash might have been accidental and unintentional is irrelevant to the felony murder charge because intent to cause death is not an element of felony murder."); *Mapps v. State*, 520 So.2d 92, 93 (Fla. 4th DCA 1988) ("Intent to kill . . . is not an element of felony murder.").

Thus, if as the state court concluded, Harris had been charged with felony murder, Harris's proposed defense would have been unavailable to him. In that event he would have faced the same degree of felony and the same potential sentence to which he entered an open plea of guilty. Under these circumstances, Harris fails to show a

---

[4] At the change of plea hearing, the State noted for the record that "the Defendant is pleading guilty to the necessarily lesser included offense of murder in the second degree, 782.04(2), and is waiving any formal filing of an Information in that regard." (Doc. 10-1 Ex. B at 15)

reasonable probability that he would have insisted on going to trial rather than entering a plea as he did.

The state court did not unreasonably conclude, therefore, that Harris failed to establish prejudice necessary to sustain his ineffective assistance claim. As Harris fails to show that the state court's determination involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact, he is not entitled to relief on Ground One.

## III. Ground Two

Harris argues that his plea was involuntary because counsel failed to advise him that he could present a defense that the murder was an independent act of co-defendant Trammell. The state court denied Harris's ineffective assistance claim (Doc. 10-1 Ex. M at 3-4) (court's record citation omitted):

> In ground two (2), the Defendant argues that his plea was involuntary because defense counsel was ineffective for failing to advise the Defendant about the possible defense of independent act as to the murder in the first degree with a firearm count. As stated above, the Defendant bears the burden of proof when claiming defense counsel was ineffective. The independent act doctrine applies in limited circumstances when a co-felon, who participated in a common plan, fails to participate in acts of a co-felon that fall outside of the original common plan. *See Dell v. State*, 661 So.2d 1035 (Fla. 3d DCA 1995) (citing *Ward v. State*, 568 So.2d 452, 453 (Fla. 3d DCA 1990)). A defendant who successfully argues this defense is exonerated from the punishment imposed for the act outside of the original common plan. However, this defense is not applicable when "the defendant was a willing participant in the underlying felony and the murder resulted from forces which they set in motion[.]" *Ray v. State*, 775 So. 2d 604, 609 (Fla. 2000); see also *Lovette v. State*, 636 So.2d 1304, 1306-07 (Fla. 1994). Although the Court in *Ray* was addressing jury instructions, the analysis can be applied to the facts before the court. The Defendant argues that defense counsel was ineffective for failing to raise independent act as a defense, but the record shows that the Defendant was an active participant in the underlying robbery and therefore couldn't raise this defense pursuant to the holding in *Ray*. Accordingly, the Defendant has failed to show prejudice under *Strickland*, and this claim is denied.

The state court did not unreasonably apply *Strickland* in denying Harris's claim. As the state court noted, Florida's independent act doctrine applies when a defendant, who previously participated in a common plan, does not participate in acts committed by his co-felon "which fall outside of, and are foreign to, the common design of the original collaboration." *Bradley v. State*, 33 So.3d 664, 675 (Fla. 2010) (quoting *Willacy v. State*, 967 So.2d 131, 141 (Fla. 2007)). However, when a defendant "was a willing participant in the underlying felony and the murder resulted from forces which they set in motion, no independent act instruction is appropriate." *Ray v. State*, 755 So.2d 604, 609 (Fla. 2000). Furthermore, an independent act defense cannot apply when death was a foreseeable result of the original plan. *Bradley*, 33 So.3d at 675 (citing *Archer v. State*, 613 So.2d 446, 448 (Fla. 1993)); *see also Thomas v. State*, 787 So.2d 27, 29 (Fla. 2d DCA 2001) (stating that the independent act doctrine does not apply "when the evidence demonstrates that the murder was committed in furtherance of the initial criminal scheme."). "[A] shooting during an armed robbery is a foreseeable event." *Cannon v. State*, 18 So.3d 562, 564 (Fla. 1st DCA 2009); *see also Washington v. State*, 873 So.2d 1268, 1270 (Fla. 4th DCA 2004) ("A shooting that occurs during an armed robbery with a firearm does not exceed the scope of the armed robbery so that an independent act instruction is required.").

The factual basis at the change of plea hearing, to which Harris did not object, shows that Harris was a willing participant in the armed burglary and home invasion robbery. The independent act doctrine would not have applied to provide Harris with a defense to the murder charge. The state court, therefore, did not unreasonably conclude that Harris failed to show prejudice due to counsel's alleged failure to inform him of the independent act theory. Because Harris fails to show that the state court's decision

involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground Two.

## IV.  Ground Three

Harris contends that his plea was involuntary because the trial court led him to believe that he would not receive "the harshest sentence available." (Doc. 6 at 11) Harris claims that Judge Tatti, who accepted his plea, told Harris in a "previous hearing" that Judge Tatti "was not going to impose any type of 'off the wall' sentence." (Doc. 6 at 11) However, Harris was sentenced by a different judge, Judge Toner, to life in prison.

Harris fails to raise a federal constitutional violation in Ground Three. Thus, his claim is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (stating that it is well-established that federal habeas relief is not available for errors of state law); *Wainwright v. Goode*, 464 U.S. 78, 83-84 (1983) (providing that a federal court may intervene in the state judicial process only to correct wrongs of a constitutional dimension). Even liberally interpreting his claim as alleging a federal due process violation, and assuming that the federal claim is exhausted,[5] however, Harris cannot obtain relief.

The state court denied Harris's claim that his plea was involuntary because he had relied on Judge Tatti's alleged remark (Doc. 10-1 Ex. M at 4) (court's record citation omitted):

> In ground three (3), the Defendant argues that his plea was involuntary because the Defendant was led to believe by the trial judge that the harshest sentence available would not be imposed if the Defendant entered into an open plea agreement. The record reflects that the Defendant was

---

[5] A habeas petitioner must exhaust his claims in state court before presenting them in his habeas petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

fully aware he could receive any punishment up to life in prison, regardless if he was under the impression the judge wasn't giving the Defendant life. Therefore, the Defendant has failed to show any prejudice under *Strickland* and this claim is denied.

As an initial matter, Harris has not identified the portion of the state court record where Judge Tatti made the "off the wall" comment, and counsel for Respondent represents that she is unable to locate such a statement in the state court record. Moreover, Harris knew when he entered his plea that he could receive life in prison. Counsel told Judge Tatti at the change of plea hearing that the defense's understanding of the plea agreement included the possibility that Harris could receive the maximum possible penalty for second degree murder, which was life. (Doc. 10-1 Ex. B at 4) Harris also told Judge Tatti that he understood the terms of the plea agreement and that the sentence could be up to life. (Doc. 10-1 Ex. B at 8-9) Harris said that he understood that there were no negotiations regarding his sentence other than the understanding he would receive at least the 25-year minimum mandatory term. (Doc. 10-1 Ex. B at 9) As previously addressed herein, Harris's statements at the plea colloquy "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 73-74. Harris fails to carry his "heavy burden" of showing that those statements were false. *See Rogers*, 848 F.2d at 168.

Furthermore, at no point during the plea colloquy did Harris raise the "off the wall" comment or indicate that Judge Tatti led him to believe he would not or could not receive a life sentence. (Doc. 10-1 Ex. B at 4-19) Harris also signed a change of plea form stating that he understood the maximum sentence for his charges was life in prison. (Doc. 10-1 Ex. C) Accordingly, the record supports the state court's determination that Harris was fully aware at the time he chose to enter his plea that he could receive life in prison. Harris

fails to show, under these circumstances, that any earlier statement by Judge Tatti rendered his plea involuntary.

Harris does not show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. Consequently, Harris is not entitled to relief on Ground Three.

## V.     Ground Four

Harris argues that trial counsel was ineffective for not objecting to the trial court's ruling on Harris's *pro se* motion to withdraw his plea. The body of Harris's motion stated (Doc. 10-1 Ex. F at 1-2):

> During my case my counsel may have come and seen me maybe 2 to 3 time[s] throughout my whole incarceration. [Counsel] never showed me any interest in my case, let alone represented me properly. [Counsel] has errored [sic], has omitted information, and has failed to file timely on my behalf. [Counsel] has failed to uphold his oath in duty, and representation under my Florida States Constitutional Rights. [Counsel] never made sure that I had an [sic] full understanding about my actions, and the conditions surrounding the plea offer that I took and that it has a different outcome in my case. Had I known the facts surrounding my actions and the conditions I would have never took [sic] this plea. As of right now I would like to withdraw my plea. Also your honor [counsel] never applied information to any of my family members on my behalf concerning my case. On a personal note, I wasn't in my right state of mind due to the seriousness of my case when I said yes to my satisfaction with [counsel's] representation during the signing of my plea agreement. I was co-hursed [sic] into signing the agreement thinking that I would receive a better outcome than life, due to the fact that Judge M. Tatti stating that he wouldn't sentence me to anything off the wall. In the ending results to my sentencing. Judge Stephen C. Toner Jr. was the judge assigned to sentencing me due to the fact that Judge Tatti was no longer the judge on my case. I feel that Judge Toner sentenced me to life due to the families [sic] interest and not the facts surrounding my case. Throughout my whole incarceration on this case Judge Toner wasn't assigned to my case until it was time for me to be sentenced.

The trial court addressed the motion to withdraw plea at a subsequent restitution hearing. Counsel told the court that he realized Harris had filed a motion to withdraw plea and described it as raising "3.850 allegations about not understanding the plea, not being of state of mind [sic]." (Doc. 10-1 Ex. G at 4) Counsel told the court, "I know I'll need to withdraw as counsel based on what he states in his motion." (Doc. 10-1 Ex. G at 5) Counsel also stated, "having received the motion to withdraw plea, I wanted to be able to add that as one of the appellate issues, but Mr. Harris kind of has to be heard either pro se or with counsel, I think, before that can be addressed." (Doc. 10-1 Ex. G at 9)

Counsel appears to have referenced the procedures established in *Sheppard v. State*, 17 So.3d 275 (Fla. 2009). In that decision, the Florida Supreme Court held that when a defendant who is represented by counsel files a *pro se* motion to withdraw plea after sentencing "based on allegations giving rise to an adversarial relationship such as counsel's misadvice, misrepresentation, or coercion that led to the entry of the plea" the trial court should not strike the motion as a nullity. *Id.* at 286-87. Rather, the trial court should hold a limited hearing to determine whether an adversarial relationship exists between counsel and the defendant. *Id.* at 287. If it appears to the trial court that an adversarial relationship has arisen, and if the defendant's allegations "are not conclusively refuted by the record, the trial court should either permit counsel to withdraw or discharge counsel and appoint conflict-free counsel to represent the defendant." *Id.* (footnote omitted).

During the restitution hearing, after counsel addressed Harris's motion to withdraw plea as described above, the trial court found that the motion was a nullity because it was

filed *pro se*, but "Mr. Harris was and is represented. He has never been without representation." (Doc. 10-1 Ex. G at 11)

Harris argues that trial counsel was ineffective in not objecting to this finding. He contends that counsel should have "object[ed] and argue[d] why the court's striking the motion to withdraw plea as a nullity was error." (Doc. 6 at 14) Harris contends that counsel's failure "resulted in the striking of a motion that could have otherwise been properly considered by the Court with conflict-free counsel appointed to advocate for withdrawal of the plea." (Doc. 6 at 15) The state court denied Harris's claim that counsel was ineffective for not objecting (Doc. 10-1 Ex. M at 4-5): [6]

> In ground four (4), the Defendant argues that defense counsel was ineffective for failing to object to and argue the Court's ruling on the Defendant's motion to withdraw plea. Specifically, the Defendant alleges that defense counsel [sic] erred in striking the Defendant's motion to withdraw plea as a nullity and defense counsel was deficient for failing to object to this ruling. The record reflects that the Statement of Judicial Acts to be Reviewed, submitted by defense counsel, included the Court's ruling on the Defendant's pro se Motion to Withdraw. Therefore, the Defendant has failed to show any deficiency by counsel under ground four (4) and this claim is denied.

The record supports the state court's finding that counsel was not ineffective. As the state court's order indicates, despite counsel's lack of an objection at the time of the court's ruling, that ruling was raised on appeal. In his appellate brief, Harris argued that the trial court erred in failing to comply with *Sheppard* when it ruled on his motion to withdraw plea. (Doc. 10-1 Ex. H) The State argued on the merits that the motion did not

---

[6] Respondent contends that Harris failed to exhaust the claim presented in Ground Four "because it was not properly presented to the trial court in a motion for post-conviction relief since it was raised and litigated on direct appeal." (Doc. 10 at 16-17, 30) Respondent's argument is not convincing. Ground Four raises a claim of ineffective assistance of trial counsel, which Harris properly raised in his Rule 3.850 postconviction motion. *See Wooden v. State*, 589 So.2d 372, 373 (Fla. 1st DCA 1991) ("[I]t is well-settled that ineffective assistance of counsel is not properly raised on direct appeal, but rather by motion pursuant to Rule 3.850.").

contain the specific allegations needed to trigger *Sheppard* or that, alternatively, any failure to conduct proceedings under *Sheppard* was harmless because Harris's claims were facially insufficient and refuted by the record. (Doc. 10-1 Ex. I)

Thus, the trial court's finding on the motion to withdraw plea was raised on direct appeal. Harris fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim to the extent he alleged that counsel's lack of objection may have impacted his ability to raise the claim on appeal.

It appears that Harris intends to raise another ineffective assistance claim. Harris contends that counsel was ineffective in not objecting to the trial court's ruling striking his motion to withdraw his plea because an objection would have led to further proceedings at the trial court level. Specifically, as addressed above, Harris contends that counsel's failure to object resulted "in the striking of a motion that could have otherwise been properly considered by the Court with conflict-free counsel appointed to advocate for withdrawal of the plea." (Doc. 6 at 15)

Harris raised this argument in his Rule 3.850 motion. (Doc. 10-1 Ex. L at 8-9) The state court identified his overall claim of ineffective assistance in not objecting but did not specifically address the effect of counsel's failure to object on further proceedings at the trial court level. Therefore, this Court proceeds as if Harris's claim was fairly presented to the state court but that the state court did not rule on it. Under the *de novo* review appropriate in such circumstances, however, Harris does not show entitlement to relief.[7]

---

[7] *See Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003) (providing that *de novo* review is appropriate when the state courts fail to resolve the merits of a federal habeas petitioner's claim that was presented to the state courts).

First, although counsel did not specifically name the *Sheppard* decision by name, counsel had already made the trial court aware that he believed further proceedings consistent with those set out in *Sheppard* were necessary. Specifically, counsel told the court that he believed that he must withdraw because of the allegations in the motion to withdraw plea and that Harris needed to be heard either *pro se* or with conflict-free counsel. Even after considering counsel's argument, however, the court rejected the motion. Harris does not show that counsel was deficient for not repeating an unsuccessful argument or demonstrate a reasonable probability that the trial court would have reached a different ruling had counsel reiterated this argument. *See, e.g.*, *Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) (stating that "an attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Lindsey v. Smith*, 820 F.2d 1137, 1152 (11th Cir. 1987) ("A habeas petitioner who proposes alternative trial strategy that would itself have proved futile has failed to demonstrate that the representation at trial fell below an objective standard of reasonableness.").

Moreover, the Fifth District Court of Appeal examined this matter of state law and rejected Harris's *Sheppard* claim. As the State pointed out on appeal, Harris did not describe counsel's alleged failings with specificity or how such actions resulted in an adversarial relationship with his counsel. He only made vague and generalized claims, unsupported by specific facts, that counsel did not visit him often, did not show interest in his case, committed errors, omitted information, and failed to make timely filings. Further, the record refutes Harris's claim that counsel did not ensure that he had a "full understanding about [his] actions and the conditions surrounding the plea offer." As

addressed, Harris represented during the thorough plea colloquy that he understood the charges, the required minimum mandatory sentence and maximum possible sentence, the fact that no particular sentence beyond the minimum was assured, and the rights he was giving up by entering a plea, and that he was satisfied with the service of counsel. (Doc. 10-1 Ex. B at 5-11)

Therefore, relief was not warranted under *Sheppard* because Harris's claims concerning his trial counsel were either too vague to require further proceedings at the trial court level or were conclusively refuted by the record.[8] *See Echeverria v. State*, 33 So.3d 802, 804 (Fla. 1st DCA 2010) (holding that the petitioner's broad, general allegations that his counsel was ineffective in advising him whether to go to trial and whether to accept a sentence over the original cap of six years "do not indicate misadvice, coercion, or misrepresentation that would require a hearing under *Sheppard*."); *Williams v. State*, 919 So.2d 645, 646 (Fla. 4th DCA 2006) ("Where the coercion alleged is legally insufficient or conclusively refuted by the record, there is no need to hold an evidentiary hearing or appoint conflict-free counsel."); *Johnson v. State*, 22 So.3d 840, 844 (Fla. 1st DCA 2009) (the failure to hold a hearing under *Sheppard* to determine the validity of an

---

[8] *Sheppard*'s application is limited to allegations giving rise to an adversarial relationship between a defendant and his attorney, such as counsel's misadvice, misrepresentation, or coercion that led to the entry of the plea. 17 So.3d at 287. The remaining allegations in Harris's motion to withdraw plea—that he was not in his "right mind" and that Judge Tatti's alleged remark about sentencing coerced him into taking the plea—do not allege an adversarial relationship with Harris's counsel. Harris was not, therefore, entitled to further proceedings at the trial court level based on these allegations. *See Smith v. State*, 21 So.3d 72, 75-76 (Fla. 1st DCA 2009) (stating that "where a defendant alleges an unfortunate circumstance leading to the entry of an uninformed plea, the allegation does not give rise to an adversarial relationship" and concluding that the state trial court can properly strike claims in a *pro se* motion to withdraw plea that do not allege a circumstance giving rise to an adversarial relationship with counsel). Accordingly, Harris cannot show that he was prejudiced by counsel's failure to object to the trial court's striking the motion to withdraw plea with respect to these allegations.

allegation of coercion is harmless error when the allegation in the motion is conclusively refuted by the record).

Harris does not demonstrate that counsel was ineffective in not raising a matter that lacked merit. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Accordingly, Harris is not entitled to federal habeas relief on Ground Four.

## VI. Ground Five

Harris asserts entitlement to relief based on the cumulative effect of counsel's alleged errors. The state court denied Harris's claim (Doc. 10-1 Ex. M at 5):

> In ground five (5), the Defendant argues that the cumulative effect of defense counsel's errors, as alleged in grounds one (1) through four (4), amount to a violation of the Defendant's constitutionally protected rights. "[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail." *Griffin v. State*, 866 So.2d 1, 22 (Fla. 2003). As discussed above, the Court's denial of the Defendant's claims raised under grounds one (1) through four (4) were based on the Defendant's failure to meet the *Strickland* standard for ineffective assistance of counsel, and as a result, without merit. Therefore, as stated by the Florida Supreme Court . . . in *Griffin*, the Defendant's claim for cumulative error must also fail, and this claim is denied.

As Harris has not demonstrated entitlement to relief on any of his ineffective assistance claims, he fails to show that the state court unreasonably rejected his cumulative error claim. *See United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."). Harris fails to demonstrate that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. Consequently, he is not entitled to relief on Ground Five.

Accordingly, it is **ORDERED** that Harris's amended petition (Doc. 6) is **DENIED**. The **CLERK** is directed to enter a judgment against Harris and to **CLOSE** this case.

**CERTIFICATE OF APPEALABILITY**
**AND**
**LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

**IT IS FURTHER ORDERED** that Harris is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. Section 2253(c)(2) limits the issuing of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Harris must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to make this showing, Harris is not entitled to a certificate of appealability. Therefore, he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Harris must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on this 25th day of February, 2020.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE